1   TRISH HIGGINS (State Bar No. 119215)
    thiggins@orrick.com
2   TIMOTHY B. DEL CASTILLO (State Bar No. 277296)
    tdelcastillo@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    400 Capitol Mall, Suite 3000
4   Sacramento, California  95814-4497
    Telephone:     916-447-9200
5   Facsimile:     916-329-4900

6   Attorneys for Defendants
    Morgan Stanley Smith Barney LLC, John S. Lin, Maynard
7   Lichterman, John Delahaye, Julie Baeder, and Walter Stevenson
    (also erroneously collectively named as "The Cypress Group")

8

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12   ROBERT APPLEBY and WINNIE          Case No.
     APPLEBY,
13                                       **NOTICE OF REMOVAL BY**
                  Plaintiff,             **DEFENDANTS MORGAN STANLEY**
14                                       **SMITH BARNEY LLC, JOHN S. LIN,**
           v.                            **MAYNARD LICHTERMAN, JOHN**
15                                       **DELAHAYE, JULIE BAEDER, AND**
     MORGAN STANLEY SMITH BARNEY         **WALTER STEVENSON (ALSO**
16   LLC is a limited liability corporation  **ERRONEOUSLY COLLECTIVELY**
     organized and existing under the laws of the  **NAMED AS "THE CYPRESS**
17   Delaware; THE CYPRESS GROUP at      **GROUP") UNDER 28 U.S.C. § 1441(c)**
     Morgan Stanley (legal form unknown); JOHN
18   S. LIN; and individual; MAYNARD
     LICHTEMAN, an individual; JOHN      Date Action Filed: May 2, 2014
19   DELAHAYE; an individual; JULIE
     BAEDER, an individual; WALTER
20   STEVENSON; and individual; and DOES 1
     TO 20, inclusive,
21
                  Defendants.
22

23

24

25

26

27

28

OHSUSA:757977553.1

1   TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

2   CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 (c), and 1446, Defendants

4   Morgan Stanley Smith Barney LLC ("MSSB"), John S. Lin, Maynard Lichterman, John

5   Delahaye, Julie Baeder, and Walter Stevenson (also erroneously collectively named as "The

6   Cypress Group") (collectively "Defendants"), hereby remove this action from the Superior Court

7   of California for the County of San Francisco to this Court, based on the following grounds:

8   **BACKGROUND**

9   1.   On May 2, 2014, Plaintiffs Robert Appleby and Winnie Appleby ("Plaintiffs")

10   filed a civil action in the Superior Court of California for the County of San Francisco entitled

11   "*Robert Appleby and Winnie Appleby, Plaintiffs, vs. Morgan Stanley Smith Barney LLC is a*

12   *limited liability corporation organized and existing under the laws of the Delaware; The Cypress*

13   *Group at Morgan Stanley (legal form unknown); John S. Lin; an individual; Maynard Lichteman,*

14   *an individual; John Delahaye; an individual; Julie Baeder, an individual; Walter Stevenson; an*

15   *individual; and Does 1 to 20, inclusive, Defendants,*" No. CGC – 14 -539080 (the "Action").

16   A true copy of the Complaint is attached to this notice as **Exhibit A**.

17   2.   The Complaint purports to assert fourteen causes of action for relief against

18   Defendants stemming from Plaintiff Robert Appleby's employment with Defendant MSSB.

19   Specifically, the Complaint alleges purported causes of action for: (1) fraud; (2) defamation;

20   (3) invasion of privacy; (4) intentional infliction of emotional distress; (5) employment

21   discrimination – disability under Cal. Gov. Code § 12940(a); (6) employment discrimination –

22   disability harassment and constructive discharge resulting from harassment under Cal. Gov. Code

23   § 12940(j), (k); (7) retaliation under Cal. Gov. Code § 12940(h); (8) age discrimination under Cal.

24   Gov. Code § 12940(a) and 29 U.S.C. § 623; (9) employment discrimination – demotion under cal.

25   Gov. Code § 12940(a); (10) failure to prevent discrimination/harassment under Cal. Gov. Code

26   12940(k); (11) violation of the California Family Rights Act; (12) violation of the Federal Family

27   and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; (13) rescission of contract; and (14) declaratory

28   relief.

3.     On May 19, 2014, Defendants filed with the San Francisco County Superior Court and served Plaintiffs with their Answer to Plaintiffs' Complaint, a true and correct copy of which is attached hereto as **Exhibit B**.

**TIMELINESS OF REMOVAL**

4.     The Complaint was filed on May 2, 2014 and has not been served on Defendants. Therefore, this notice of removal is timely filed within 30 days of service pursuant to 28 U.S.C. section 1446(b).  *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day period for removal runs from the date that service is completed as required by state law).

**FEDERAL QUESTION JURISDICTION**

5.     This Action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by Defendants pursuant to 28 U.S.C. § 1441(c), because Plaintiffs' eighth and twelfth cause of action arise under 29 U.S.C. § 623 and 29 U.S.C. § 2601 *et seq.*  Because Plaintiffs' other claims arise from the same controversy underlying their federal claims, this Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367.  *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1012 (9th Cir. 2013).

**VENUE**

6.     Venue lies in the Northern District of this Court pursuant to 28 U.S.C. §§ 1441 and 1446(a).  This Action was originally brought in the Superior Court of California, County of San Francisco.

**INTRADISTRICT ASSIGNMENT**

7.     This Action arises in San Francisco County.  (Compl., ¶ 22).  Accordingly, pursuant to Northern District Civil L.R. 3–2, the Action should be assigned to the San Francisco Division or the Oakland Division of this Court.

**NOTICE OF REMOVAL**

8.     This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Francisco.

NOTICE OF REMOVAL

OHSUSA:757977553.1

1      9.      In compliance with 28 U.S.C. § 1446(a), attached are copies of the state-court

2  papers received by or served by Defendants: the Complaint (**Exhibit A**) and the Answer

3  (**Exhibit B**).

4      WHEREFORE, Defendant prays that this civil action be removed from the Superior Court

5  of the State of California, County of San Francisco to the United States District Court of the

6  Northern District of California.

7  Dated:  May 19, 2014.                    TRISH HIGGINS
                                            TIMOTHY B. DEL CASTILLO
8                                           ORRICK, HERRINGTON & SUTCLIFFE LLP

9

10                                          /s/ Trish M. Higgins
                                            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
11                                          Trish Higgins
                                            Attorneys for Defendants
12                                          Morgan Stanley Smith Barney LLC, John S. Lin,
                                            Maynard Lichterman, John Delahaye, Julie
13                                          Baeder, and Walter Stevenson (also erroneously
                                            collectively named as "The Cypress Group")

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -                    NOTICE OF REMOVAL

OHSUSA:757977553.1

# EXHIBIT A

1  Mary Shea Hagebols (SBN 113222)
2  SHEA LAW OFFICES
   1814 Franklin Street, Suite 2200
3  Oakland, CA 94612
   Tel: 510-208-4422
4  Fax: 415-520-9407
   mary@shealaw.com
5
6  Carney R. Shegerian, Esq. (SBN 150461)
   SHEGERIAN & ASSOCIATES, INC.
7  225 Arizona Avenue, Suite 400
   Santa Monica, California 90401
8  Tel: (310) 860-0770
   Fax: (310) 860-0771
9  Email:  cshegerian@shegerianlaw.com

10  Attorneys for Plaintiff Robert Appleby

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                     COUNTY OF SAN FRANCISCO

14                     (San Francisco)   C G C - 1 4 - 5 3 9 0 8 0

15

| | |
|---|---|
| 16  ROBERT APPLEBY and WINNIE | Case No. |
| 17  APPLEBY, | **COMPLAINT FOR DAMAGES** |
| 18            Plaintiffs, | 1. FRAUD/DECEIT |
| 19  vs. | 2. DEFAMATION |
| 20 | 3. INVASION OF PRIVACY |
| 21  MORGAN STANLEY SMITH BARNEY | 4. INTENTIONAL INFLICTION OF |
| 22  LLC is a limited liability corporation | EMOTIONAL DISTRESS |
| 23  organized and existing under the laws of the | 5. EMPLOYMENT DISCRIMINATION – |
| 24  Delaware; THE CYPRESS GROUP at | DISABILITY– Government Code section |
| 25  Morgan Stanley (legal form unknown); JOHN | 12940(a)]; |
| 26  S. LIN; and individual; MAYNARD | 6.  DISABILITY HARASSMENT |
| 27  LICHTEMAN, an individual; JOHN | RESULTING FROM HARASSMENT |

**F I L E D**
Superior Court of California
County of San Francisco

MAY 0 2 2014

CLERK OF THE COURT
BY: _____
Deputy Clerk

**SUMMONS ISSUED**

**BY FAX**

28

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 1 -

| | |
|---|---|
| DELAHAYE; an individual; JULIE BAEDER, an individual; WALTER STEVENSON; and individual; and DOES 1 TO 20, inclusive.<br><br>                         Defendants. | Government Code section 12940(j),(k);<br>7. RETALIATION [Government Code section 12940(h)];<br>8. EMPLOYMENT DISCRIMINATION– DEMOTION;<br>9.  FAILURE TO PREVENT DISCRIMINATION/HARASSMENT [Government Code section 12940(k)];<br>10.    VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT;<br>11.    VIOLATION OF FEDERAL FAMILY AND MEDICAL LEAVE ACT;<br>12.    NEGLIGENT MISREPRESENTATION<br>13.    RESCISSION OF CONTRACT;<br>14.    DECLARATORY RELIEF<br><br>AMOUNT IN CONTROVERSY IN EXCESS OF $ 6,000,000<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 2 -

# I.

## <u>INTRODUCTION</u>

1.      Plaintiff Robert ("Rob") Appleby is a 62 year old Senior Vice President and Financial Advisor for Defendant Morgan Stanley Smith Barney, LLP, who is currently on long term disability after having developed severe depression caused in large part by his 32 year-old work partner (Defendant John Lin) and other members of the MSSB Cypress Group (see Exhibit A) trying to force Plaintiff Robert Appleby to retire and turn over his lucrative client portfolio (worth roughly $100,000,000 in managed assets). After he went on medical leave, Defendant MSSB and others' campaign of harassment and discrimination did not end.

2.      In November 2012, roughly six months after he was forced out on leave, Plaintiff Robert Appleby suffered a dangerous and debilitating set back in his recovery. The malicious and callous acts of Defendants Maynard Lichteman and John Delehaye caused exacerbation of his severe depression.  On or before November 28, 2012, Defendants Maynard Lichteman and/or John Delehaye contacted Plaintiff Robert Appleby and instructed him to come to the MSSB office urgently to sign off on some revised various joint production agreements by which Plaintiff Robert Appleby's partners and he shared revenue. Plaintiff did not realize it at the time, but as it turned out, these amendments to the Joint Production Arrangement slashed his partnership share from twenty (20%) percent to one (1%) percent.

3.      Plaintiff Robert Appleby, who was on medical leave, extremely depressed, and heavily medicated, was required to come to an office in a remote location on Sansome Street to meet Defendant MSSB  and partners to sign these amendments. Plaintiff Robert Appleby's was told it was urgent and imperative that he sign off because they affected staff pay (an issue they

<u>COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL</u>

- 3 -

knew he was sensitive to) and not Plaintiff Robert Appleby. Plaintiff Robert Appleby's was

falsely told he did not have to worry, that these documents were only "temporary fixes" so his

staff could be paid, that he had to sign them "right now" without being given a full and

meaningful opportunity to read them.

4.      After he signed the documents (Exhibits B-F attached hereto), Plaintiff Robert

Appleby later realized he had been mislead and that in reality the documents negatively impacted

him and his spouse Plaintiff Winnie Appleby should Plaintiff Robert Appleby die.  Plaintiff

Robert Appleby contends that he was required to sign off on agreements that affected his future

income, and that of his surviving spouse Plaintiff Winnie Appleby should he die, under duress,

under false pretenses, when Plaintiff Robert Appleby was not of sound mind and body, was

heavily medicated on psychotropic drugs and still on medical leave being treated for his illness.

These agreements were far worse than agreements that were in place before Plaintiff Robert

Appleby went on medical leave. Plaintiff Robert Appleby contends this was in inappropriate

interference with his medical leave and further discrimination regarding his disability. In

essence.

5.      After Plaintiff Robert Appleby was forced on leave, Plaintiff was been replaced

by a much younger female with less industry experience.

6.      Plaintiff Winnie Appleby is Rob's wife who is a third party beneficiary of

Robert's compensation agreements and, in particular the death benefits.

7.      Prior to Plaintiff being forced on medical leave at the instruction of his "partners"

Defendant MSSB was well are of Plaintiff Robert Appleby's disability, workplace mistreatment,

his worsening condition, and knowledge that Defendant Lin has caused emotional harm to at

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 4 -

least other older employee who went out on medical leave in part because of Defendant Lin's volatility and harassment. Despite this knowledge, Defendant MSSB did nothing to remedy Appleby's hostile work environment based on age and disability.

8.     On May 10, 2013, Appleby filed his DFEH complaint of discrimination, harassment, and retaliation based on his age, disability, and exercising his medical leave rights, and obtained an immediate right to sue letter. (See Exhibit G)

9.     Appleby will be entitled to double actual damages caused by a willful violation of his medical leave rights.  (29 U.S.C. § 2617(a)(1)(A)(iii).)

10.     Because Defendant MSSB, Maynard Lichteman and John Delehaye deliberately targeted Plaintiff Robert Appleby, a person with a disability, to induce him to sign the amendment to the Joint Production Arrangement, based on false pretenses and intentional misrepresentations, Appleby will be entitled to treble damages flowing from the misrepresentation.  (Civ. Code, § 3345.)

## PRELIMINARY ALLEGATIONS

11.     Plaintiff Robert Appleby is a 62 year old disabled person and is an adult person, and a resident of the County of San Francisco, State of California.

12.     Defendant MORGAN STANLEY SMITH BARNEY LLC ("MSSB") is a corporation organized and existing under the laws of the State of New York, licensed to do and doing business in the State of California, and is subject to suit under the California Fair Employment and Housing Act, Government Code section 12900, et seq. (FEHA) in that defendant regularly employs five or more person and the Family Medical Leave Act.

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 5 -

13.     Plaintiffs are informed and believes that Defendant Cypress Group is a partnership of operating under and with authority of Defendant MSS.  (See Exhibit A.) Defendant Cypress Group is comprised of Defendants JOHN S. LIN; and individual; MAYNARD LICHTEMAN, an individual; JOHN DELAHAYE; an individual; JULIE BAEDER, an individual; WALTER STEVENSON; and individual; and DOES 1 TO 20, inclusive,

14.     Plaintiffs are informed and believes that Defendant JOHN S. LIN is an individual who is under the age of 40 and who resides in the State of California and who is a "managing agent" of Defendant MSSB .

15.     Plaintiffs are informed and believes that Defendant MAYNARD LICHTEMAN is an individual who resides in the State of California and who is a "managing agent" of Defendant MSSB .

16.     Plaintiffs are informed and believes that Defendant JOHN DELAHAYE is an individual who resides in the State of California and who is a "managing agent" of Defendant MSSB .

17.     Plaintiffs are informed and believes that Defendant JULIE BAEDER is an individual who resides in the State of California and who is a "managing agent" of Defendant MSSB .

18.     Plaintiffs are informed and believes that Defendant WALTER STEVENSON is an individual who resides in the State of California and who is a "managing agent" of Defendant MSSB .

19.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 6 -

responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

20.     Defendants, and each of them, were at all material times an "employer" within the meaning of California Government Code section 12926(d), and as such were bound by the California Fair Employment and Housing Act (California Government Code section 12900 et seq.) (hereinafter, "California Fair Employment and Housing Act ("FEHA")"), prohibiting it from discrimination, harassment or retaliation against any employees based on sex, and requiring them to take all reasonable steps necessary to prevent discrimination and harassment from occurring, including taking immediate and appropriate corrective action in response to unlawful conduct under the California Fair Employment and Housing Act ("FEHA").

21.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants was the agent and employee of each of the remaining defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

22.     The unlawful employment practices complained of herein occurred in San Francisco County, California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23.     Plaintiff Robert Appleby filed timely charges of discrimination with the California Department of Fair Employment and Housing (hereinafter "DFEH"). The DFEH issued Right to Sue Notices on those charges. Plaintiff alleges, on information and belief that these Right to Sue Notices were served on Defendant MSSB.

## CONTINUING VIOLATIONS

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 7 -

24.     The wrongful acts and omissions giving rise to the Defendants' liability in this action commenced in our about 2011 and have been and are "continuing" in nature as of the date of filing of this Complaint.  Plaintiff reserves the right to amend this Complaint as new and additional facts and claims arise or become known to Plaintiff.

<u>TOLLING DUE TO DURESS</u>

25.     Defendants placed Plaintiff Robert Appleby under severe emotional duress and he suffered serious and protracted mental illness causing him at times to be incapacitated. This in turn may have caused delays in filing suit, filing his DFEH complaint or otherwise complaining of unlawful acts. "It is well settled that where delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations]. [Citations.]" (*Gaglione v. Coolidge* (1955) 134 Cal.App.2d 518, 527, 286 P.2d 568; see also *Rupley v. Huntsman* (1958) 159 Cal.App.2d 307, 313, 324 P.2d 19; *Langdon v. Langdon* (1941) 47 Cal.App.2d 28, 32, 117 P.2d 371; *Industrial Indem. Co. v. Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 689, 252 P.2d 649; *Carruth v. Fritch* (1950) 36 Cal.2d 426, 434, 224 P.2d 702.)

**II.**

**FACTUAL DISCUSSION**

26.     Defendant MSSB's Financial Advisors were expected to gather assets of $10 million per year and to obtain revenue through asset management fees and commissions.  A team of Financial Advisors shared revenues under a Joint Production Arrangement and a Former Financial Advisor Program Commitment Agreement.  Plaintiff Robert Appleby's partnership "Cypress Group" consisted of five Financial Advisors:  Plaintiff Robert Appleby, Senior Vice President and Portfolio Manager Walter Stevenson, Senior Vice President Maynard

<u>COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL</u>

- 8 -

Lichterman, First Vice President John Lin, and First Vice President Julie Baeder.

27.     Plaintiff Robert Appleby's personal connections with the computer industry made him a top producer for MSSB and its predecessor for 25 years.  To retain Plaintiff Robert Appleby's valuable services in 1998, MSSB gave him two notes:  Retention Note A for $200,000 and Retention Note B for $50,000.  Plaintiff Robert Appleby regularly obtained new clients from .com start-up companies that were in the two to three year process of preparing for initial public offerings.  Plaintiff Robert Appleby then worked collaboratively with Cypress team and staff to re-invest his client's employees' sales revenues.  In 2009, MSSB's consultant team trainer, Bill Stepanek rated Cypress team as the best team in MSSB's Western Division. In recognition of Plaintiff Robert Appleby's contributions to Cypress Team, he was entitled to a 20 percent share of its revenue production under the December 2011 Joint Production Arrangement.

28.     The Cypress Group met each morning to discuss the day's agenda and how best to serve existing clients and follow up on leads to new clients.  In 2011, Stevenson rarely came into the office because he was semi-retired and was in the process of turning his clients over the other Group members.  Lichterman was preparing for retirement, and much of Plaintiff Robert Appleby's focus was on helping relocate the office from Berkeley to San Francisco, rather than on asset gathering. So, the substantially younger members and less senior members of the Cypress Group, Baeder and Lin, assumed management of most of Stevenson's clients.

29.     Defendant Lin recognized the financial benefits he accrued when the senior members of Cypress Group retired and began trying to force Plaintiff Robert Appleby to retire also.  Knowing how much of Plaintiff Robert Appleby's job satisfaction derived from working

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 9 -

collaboratively, Lin dismantled the collegiality of Cypress Group, and unbelievable began treating Plaintiff Robert Appleby and others as his subordinates.  Morale plummeted and the workload increased.  One staff member, Ellen Clariza, became so stressed by John Lin's harassment and demeaning behavior, that she was forced to take medical leave.

30.     As Branch Manager, Defendant John Delahaye was responsible for supervising the Group members.  Defendant Delahaye was the Series 24 supervisor and thus, under legal and regulatory rules, was the manager.  Yet, Lin assumed the right to constantly criticize Plaintiff Robert Appleby's performance both privately and publically, and Delahaye allowed him to do so.  For example, Defendant Lin angrily berated Plaintiff Robert Appleby in front of his staff for his lack of technological skill.  Plaintiff Robert Appleby, like others of his generation, did have difficulty transitioning to communicating primarily through social media and becoming proficient with the new computerized management system - PM Trade.  Yet, no one criticized Defendant Maynard Lichterman, who was already in the process of retiring, for refusing to obtain these technological skills.

31.     Plaintiff Robert Appleby became increasingly isolated as the Group members shunned him and discussed outside his presence how best to transition Defendant Stevenson's clients to Defendants Lin and Baeder. This ostracization compelled with Defendant Lin's harassment triggered a major depression in Plaintiff Robert Appleby.

32.     Plaintiff Robert Appleby's productivity had naturally declined in favor of the collective good as he focused on relocating the office.  It further declined as Plaintiff Robert Appleby's grief over his mother's death in June 2011 and severe distress over Lin's pervasive attacks developed into chronic depression.  Plaintiff Robert Appleby's depression limited his

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 10 -

ability to concentrate, focus, and remember which adversely affected his ability to handle complex matters and follow-up on details. Plaintiff Robert Appleby's appearance and demeanor also deteriorated dramatically during the summer of 2011. He looked haggard, ill, and despondent. Although he was normally a very friendly person, he became silent and withdrawn. At this time, Plaintiff Robert Appleby's depression was obvious to everyone except himself. But, even if Plaintiff Robert Appleby did not initially recognize that he was depressed, his vulnerability to Defendants Lin's attacks increased as his depression worsened. Defendants Lin continued to seize every opportunity to inappropriately criticize Plaintiff Robert Appleby's performance in a manner that demeaned, humiliated, and intimidated Plaintiff Robert Appleby. As Plaintiff Robert Appleby himself puts it, "I was so down, I could not stand up for myself." Again, Defendants Lichterman had similar problems with concentration and memory that Defendants Lin ignored.

33.    Plaintiff Robert Appleby voiced his objections to Defendants Lin's harassment, to Defendants Lin and other Group members. Plaintiff Robert Appleby's wife complained to Defendants Delahaye about Defendants Lin's targeting of Plaintiff Robert Appleby and how it was "traumatizing" him. Defendants Lichterman also expressed his concerns about Plaintiff Robert Appleby to Delahaye, "Something is seriously wrong with him [Plaintiff Robert Appleby]. We don't know what to do."

34.    Defendants MSSB had a duty under the Fair Employment and Housing Act to train its supervisory staff to proficiency on how to respond to a complaint of unfair treatment and how to respond when they became aware of a highly uncharacteristic decline in demeanor and performance by a previously exemplary employee. Yet, Defendants Delahaye, who had a

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 11 -

duty to relay Mrs. Plaintiff Robert Appleby's complaint and Defendants Lichterman's concerns to MSSB's Human Resources Department, either did nothing or Defendants MSSB ignored his reports. MSSB did not initiate an interactive process to determine if Plaintiff Robert Appleby's mental problems were due to a mental disability that needed reasonable accommodation. And Lin continued unabated his campaign to force out Plaintiff Robert Appleby.

35.    On September 30, 2011, the office relocated to San Francisco. Although there were still reorganizational problems to deal with, Plaintiff Robert Appleby was eventually able to refocus his attention on gathering new clients. These included Zynga.com and a Google employee who sold his startup to YouTube. Hot prospects included referrals from these new clients, as well as internet music content marketer BeatsMe.com, CEO Brian Sugar of PopSugar.com, and code editors for internet site developers HotMetal.com and Space.com. Nonetheless, Plaintiff Robert Appleby's work environment became so hostile that he dreaded coming into the office so much that he would become physically ill on his way to work.

36.    In early 2012, Plaintiff Robert Appleby sought medical help for his depression from Mark Zasman, M.D., who prescribed Paxil (an anti-depressant) and Antivan (an anti-psychotic) medications whose side effects actually increased Plaintiff Robert Appleby's anxiety, confusion, concentration and memory problems.

37.    Of note, the Cypress Group had supported Defendants Baeder when she was going through a lengthy and bitter divorce that directly impacted his demeanor and performance. Around March 2012, Plaintiff Robert Appleby sought similar support from his Group by disclosing during a Group meeting that his physician was treating him for severe depression. Plaintiff Robert Appleby also hoped disclosing the source of his mental limitations

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 12 -

would stop Defendants Lin's constant harassment of him. Instead of helping Plaintiff Robert Appleby obtain reasonable accommodation, the Group members called a meeting in early May, 2012 in which Plaintiff Robert Appleby's colleagues blind-sided him for nearly 30 minutes with a list of grievances, hurtful comments, enumeration of his shortcomings, accusations of drinking on the job, and ordering him to take a leave of absence to "recover." When Plaintiff Robert Appleby protested that he had honored the Group's agreement not to drink alcohol while working, even when socializing with clients, he was falsely accused that he had smelled of alcohol. Defendants MSSB had not conducted any investigation into this hurtful baseless gossip, did not explore whether Plaintiff Robert Appleby was under the influence of alcohol at work, and Plaintiff Robert Appleby was not afforded any opportunity to refute these accusations through sobriety tests.

38.     Beaten down and more depressed than ever after this assault by some of his partners (mainly Defedant Lin and Lichteman), Plaintiff Robert Appleby capitulated and asked Defendant Delahaye about a short term disability leave under the company's Metlife policy. Defendant Delahaye immediately escorted Plaintiff Robert Appleby upstairs where, to his surprise, leave applications had apparently already been prepared for him.

39.     Around September 2012, Plaintiff Robert Appleby's prescriptions were changed to 50 mg daily of Zyprexa (an anti-psychotic) and 30 mg daily of Lexapro (an anti-depressant) whose side effects still included confusion, concentration, and memory problems.

40.     On about November 28, 2012, at Defendant John Delahaye's command, Plaintiff Robert Appleby met Defendant Delahaye and Defendant Lichterman in the lobby of MSSB's San Francisco office building and escorted him to an empty office on a different floor where

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 13 -

they met for about an hour.  Defendants Delahaye and Lichterman double-teamed Plaintiff Robert Appleby falsely telling him it "was urgent and imperative" that he sign amendments to the Joint Production Arrangement (AJPA) (see Exhbit B-F) immediately so that staff member Sheila Gladney could be paid during Plaintiff Robert Appleby's leave of absence.  He was told it was "urgent" and that this want a "temporary fix" and Plaintiff has "nothing to worry about." Both Defendants Delahaye and Lichterman persuaded Plaintiff to truest them and then they misrepresented to Plaintiff Robert Appleby that signing the AJPA would not affect his own rights and that the and was to only be in effect during his leave absence . Plaintiff Robert Appleby, who was not of sound mind at the meeting due to the heavy medication he was one, detrimentally relied on Defendants Delahaye's and Lichterman's misrepresentations, could not read or understand what he was signing due to the effects of the medication he was on, and mistakenly understood his share of the Group's revenue would revert to twenty percent (20%) percent on his return from leave.  In fact, under the AJPA, Plaintiff Robert Appleby's share was reduced permanently to one percent (1%) and his death benefits were also reduced.  He was never even given a copy of the underling Joint Production Agreements that were purportedly executed in September and October 2011 sot see what in face was being amended. After Plaintiff signed the "amendments" Plaintiff's other partners, Defendants John Lin, Julie Baeder, who knew of Plaintiff's depression, that he was on medical leave, and who owed him a fiduciary duty, signed off on the amendments to their own pecuniary benefit..

      41.    Plaintiff later learned that the document he signed were not "temporary fixes," that they did affect him permanently, and that such a substantial reduction in income qualifies as a demotion.  Plaintiff eventually realized he had been duped during December 2013 telephone

<u>COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL</u>

- 14 -

discussions about his potential disability retirement with Human Resources Representative Sasha Price and his supervisor.

42.     As consequent of this blind side, and feeling completely betrayed by his partners, Plaintiff deteriorated to the point where he nearly died on two occasions.  The financial impact has been devastating to the point where he and his wife were forced to sell the family home and move into an apartment and he lied in constant fear that he will not have the means to support his family.

### FIRST CAUSE OF ACTION

Fraud

Against All Defendants

Plaintiffs, hereby restate, reallege, and incorporate by reference herein the preceding paragraphs of this complaint, as though fully set forth herein.

43.     Plaintiffs allege that the Defendants conduct, and each of them, as alleged herein was a fraud and/or deceit against Plaintiffs, and that Plaintiffs discovered that such acts were fraudulent within the last three years.

44.     Plaintiffs, on information and belief, allege that Defendants by and through its officers, took advantage of Plaintiff Robert Appleby with full knowledge that he was medically and mentally disabled and on medical leave and nevertheless induced him to sign an amended Joint Production Agreement that was detrimental to Plaintiff Robert Appleby and his wife.

45.     Defendant actions were so hurtful, harmful and pernicious that they wholly undermined  Plaintiff Robert Appleby's recovery and ability return to recover and return to work causing him to suffer economic harms and lost benefits.

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 15 -

46.     Plaintiff Robert Appleby reasonably believed and relied on Defendants promised and assurances regarding the amendments to the JPAs.

47.     In reliance on the assertions and to the detriment and prejudice of Plaintiff Robert Appleby who was wholly disabled and not of sound mind, trusted Defendants signed amendment to the JPAs that reduced his percent cut of partnership proceed to 1%.

48.     As a direct result of conduct, the assertions and concealment by the Defendant, Plaintiffs have lost the ability to earn and income and lost wages plus interest thereon, according to proof.

49.     Whereas Defendants deliberately made misrepresentations toward Plaintiff Appleby to induce him to sign the amendment to the Joint Production Arrangement, Appleby will be entitled to treble damages flowing from the misrepresentation.  (Civ. Code, § 3345.)

In addition to causing actual damages, the suppression of true facts and assertion of false information was done with malice, oppression and/or fraud on the part of the Defendants for the purpose of depriving Plaintiffs of their legal property rights to compensation.  Such acts were done with the authorization, ratification, and/or advance knowledge of the officers and/or directors of Defendant MSSB.  Such acts justify the awarding of punitive damages to the Plaintiffs in an amount according to proof

WHEREFORE, plaintiff prays judgment as set forth below.


## SECOND CAUSE OF ACTION

### (Defamation)

As to Defendant MSSB, LIN, LICHTEMAN and DELAHAYE and DOES 1-10, Plaintiff

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 16 -

alleges:

50.     The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference as though fully set forth herein.

51.     Plaintiff is informed and believes Defendants MSSB, LIN, LICHTEMAN and DELAHAYE and DOES 1-10 , and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community.  These false and defamatory statements included express and implied accusations that Plaintiff was incompetent and unprofessional.

52.     While the precise dates of these publications are not known to Plaintiff, he has discovered and is informed and believes the publications started in late 2011 after March 2012 when Plaintiff disclosed his severe depression thus triggering a reasonable accommodation, and have continued to the present for the improper purpose of smearing Plaintiff's professional reputation and destroying his career, and in retaliation against Plaintiff for exercising his right to complain of unlawful discrimination, retaliation and violation of privacy.  These were published and republished to try to cause Plaintiff emotional distress.  These publications were outrageous, negligent, reckless, intentional and maliciously published and republished by Defendants, and each of them.  Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were and continue to be,  foreseeably published and republished by Defendants, their agents and employees, recipients in the community. Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 17 -

53.     During the above-described time-frame, Defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendants, and each of them, and the community, all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

54.     The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation.   These publications included the following false and defamatory statements (in violation of Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiff was a poor performer, incompetent, dishonest, unmotivated, and a poor employee; that she knowingly or deliberately mishandled cases in order to damage claimants or the counties.  These and similar statements published or implied by Defendants acts, and each of them, expressly and impliedly asserted that Plaintiff was incompetent, unprofessional, a poor employee, a bad person and a liar, and engaged in criminal conduct.

55.     Plaintiff is informed, believes and fears that   these false and defamatory per se statements will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations.  Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements in connection with attempts to seek employment.

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 18 -

56.   The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

57.   None of Defendants' defamatory publications against Plaintiff referenced above are true.

58.   The above defamatory statements were understood as assertions of fact, and not as opinion.  Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

59.   Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to retaliate against his for complaining of unlawful conduct, filing charges of discrimination, requesting reasonable accommodation regarding Defendants, to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, to attempt to interfere with his livelihood and ability to earn income; to cause him to be terminated, and/or to attempt to justify the termination, and to retaliate against Plaintiff for prior ill will, rivalry, and disputes in retaliation for his objections  to unlawful discrimination and violations of privacy.

60.   Each of these publications by Defendants, and each of them, were made with knowledge

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 19 -

that no investigation supported the unsubstantiated and obviously false statements. The Defendants, published these statements knowing them to be false, unsubstantiated by any reasonable investigation and the product of hostile witnesses. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

61.    The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, and employment. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

62.    Plaintiff suffered humiliation, mental anguish, sleep disturbance, damage to career, extreme emotional, physical and financial distress all to his general damage in an amount according to proof at trial.

63.    As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, anxiety,

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 20 -

severe emotional distress, shunning, anguish, fear, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

64.     The individual Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.  All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them.  Plaintiff thus is entitled to recover punitive and exemplary damages from the individual Defendants, and each of them, for these wanton, obnoxious, and despicable acts  in an amount based on the wealth and ability to pay according to proof at time of trial.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION

(Invasion of Privacy)

As to Defendants and each of them Plaintiff alleges:

65.     The allegations set forth in the previous paragraphs are realleged and incorporated herein by reference as though fully set forth herein.

66.     Article I, Section 1, of the California Constitution establishes that each person in this state has a right to privacy.

67.         Plaintiff is informed and believes the above-named Defendants, and each of them,

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 21 -

by the herein-described acts, conspired against to violate Plaintiff's right to privacy. At all times mentioned Plaintiff had a legally protected privacy interest in his medical condition and information, and a reasonable expectation that his privacy would not be violated by , in his position of authority over his. A serious invasion of Plaintiff s medical privacy occurred when, without permission or consent, forwarded Plaintiff's confidential medical information to other staff. As a proximate result of this invasion of privacy, and the extreme and outrageous conduct engaged in by , Plaintiff suffered humiliation, mental anguish and distress all to his general damage in an amount according to proof at trial.

68.     Plaintiff suffered humiliation, mental anguish, sleep disturbance, damage to career, extreme emotional, physical and financial distress all to his general damage in an amount according to proof at trial.

69.     Defendant's conduct as herein alleged was reckless, malicious and oppressive in that it was conduct carried on by his in willful and conscious disregard of Plaintiff s rights of privacy of his medical information. Plaintiff is therefore entitled to an award of punitive damages as to .

WHEREFORE, Plaintiff prays for judgment against Defendants as is more fully set forth below.

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

As to Defendants and each of them Plaintiff alleges:

70.     The allegations set forth in the previous paragraphs are realleged and incorporated herein by reference as though fully set forth herein.

71.     Defendants engaged in extreme and outrageous conduct individually and in their managerial and supervisorial positions of authority over Plaintiff, and harassed and

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 22 -

tormented Plaintiff as herein above alleged with the goal of causing his to suffer extreme humiliation, duress, emotional distress, dread and intimidation.

72.     Defendants engaged in the extreme and outrageous conduct herein above alleged with wanton and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

73.     As a proximate result of the extreme and outrageous conduct engaged in by Defendants Plaintiff suffered humiliation, mental anguish, sleep disturbance, damage to career, extreme emotional, physical and financial distress all to his general damage in an amount according to proof at trial.

74.     The individual Defendants' conduct as herein alleged was malicious and oppressive in that it was conduct carried out by Defendants in a willful and conscious disregard of Plaintiff's rights and subjected his to cruel and unjust hardship.  Plaintiff is therefore entitled to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as more fully set forth below.


### FIFTH CAUSE OF ACTION

### [EMPLOYMENT DISCRIMINATION-- DISABILITY--

### Government Code section 12940(a)]

### [AGAINST ALL DEFENDANTS]

75.   Plaintiff repeats and realleges paragraphs 1 through 5, inclusive, and incorporates same by reference, as though set forth in full herein.

76.   This action is brought pursuant to California Government Code section 12940(a), which

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 23 -

prohibits employment discrimination based on mental disability.

77.    In or about June, 2011, plaintiff developed a mental disability consisting of severe mental depression. Defendants, and each of them, were aware of plaintiff's mental disability because plaintiff informed them of same on or about March, 2012.

78.    Defendants, and each of them, were also aware of plaintiff's disability prior to that time because they had observed this condition in plaintiff.

79.    From June, 2011, until the present date, defendant MORGAN STANLEY discriminated against plaintiff by failing to provide information to plaintiff regarding his rights under the Americans with Disabilities Act, the California Family Rights Act, and the Federal Medical Leave Act.

80.    From May 2012 to the present date, defendants, and each of them, further discriminated against plaintiff by failing to give plaintiff the necessary medical leave to treat his disability, instead demoting plaintiff to a lower position.

81.    Defendant's demotion of plaintiff, failure to provide information regarding his legal rights, and failure to provide time off constitute disparate treatment in that it was based on the fact that plaintiff is a disabled person under Government Code section 12926(j)(1), and 12926.1(b), and [c]. Defendant intentionally demoted plaintiff, and refused to give plaintiff information and necessary medical leave,  plaintiff, because he is a disabled person.

82.    Defendant's discriminatory actions against plaintiff, as alleged above, constituted unlawful discrimination in employment on account of medical disability, in violation of Government Code section 12940(a)(1).

83.    As a proximate result of defendant's discriminatory actions against plaintiff, as alleged

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 24 -

above, plaintiff has been harmed in that plaintiff has suffered the loss of the wages, salary, benefits, and additional amounts of money plaintiff would have received if plaintiff had been retained in his same position. As a result of such discrimination and consequent harm, plaintiff has suffered damages in an amount according to proof.

84.     As a further proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that plaintiff has suffered the intangible loss of such employment-related opportunities as experience in the position held by plaintiff. As a result of such discrimination and consequent harm, plaintiff has suffered damages in an amount according to proof.

85.     As a further proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body.  As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof.

86.     The above-recited actions of defendant were done with malice, fraud, or oppression, and in reckless disregard of the plaintiff's rights under FEHA.

87.     No adequate remedy exists at law for the injuries suffered by plaintiff herein, insofar as the employment opportunity that defendant has denied to plaintiff cannot be secured absent injunctive relief. If this court does not grant injunctive relief of the type and for the purpose specified below, plaintiff will suffer irreparable injury. Therefore, plaintiff requests the following injunctive relief: requiring defendant MORGAN STANLEY to rehire plaintiff for the employment position previously held by plaintiff.

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 25 -

88.     On May 10, 2013, and within one year of the date of the discrimination committed by defendant, plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing. A copy of this charge is appended hereto, marked Exhibit A, and is incorporated by this reference as though fully set forth.

89.     On May 10, 2013, the DFEH issued to plaintiff a notice of right to bring a civil action based on the charge that is Exhibit G to this complaint. A copy of this notice of right of action is appended hereto, marked Exhibit G, and is incorporated by this reference as though fully set forth.

WHEREFORE, plaintiff prays judgment as set forth below.

## SIXTH CAUSE OF ACTION

### EMPLOYMENT DISCRIMINATION– DISABILITY HARASSMENT AND CONSTRUCTIVE DISCHARGE RESULTING FROM HARASSMENT

### Government Code section 12940(j),(k).

90.     Plaintiff repeats and realleges paragraphs 1 through 19, supra, and incorporates same by reference, as though fully set forth in full herein.

91.     Defendant MORGAN STANLEY and/ or defendant's agents and supervisor, JOHN LIN, engaged in the following actions with the intent of harassing plaintiff on account of his mental disability: acts of intimidation, yelling, speaking to plaintiff in a raised voice, "bad mouthing" plaintiff to others, and berating comments made about plaintiff, all by co-worker John Lin; failing to provide plaintiff with information regarding his rights under Americans with Disabilities Act, the California Family Rights Act, and the Federal Medical Leave Act, and

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 26 -

demoting plaintiff to a lower position.

92.     Defendant and/ or defendant's agents and supervisors, [NAME], knew or should have known of these harassing actions because [ADD FACTS]. Despite defendant's actual or constructive knowledge of the above mentioned harassment, and the knowledge of its supervisors and agents, defendant failed to take immediate and appropriate corrective action to stop the harassment. Further, before the harassment occurred, defendant failed to take all reasonable steps to prevent such harassment from occurring.

93.     The actions alleged in paragraphs 1-19 above, caused plaintiff to be constructively discharged from his employment, in that any reasonable person in plaintiff's position subject to those actions would have resigned or quit his employment, as plaintiff was compelled by those actions to do so. Defendant had actual knowledge of the intolerable conditions caused by the acts of harassment alleged above, but failed to take any steps to end those conditions. Furthermore, defendant knew or should have known that plaintiff's resignation would result from its actions.

WHEREFORE, plaintiff prays judgment as set forth below.


## SEVENTH CAUSE OF ACTION

### RETALIATION

### [Government Code section 12940(h)]

### [AGAINST ALL DEFENDANTS]

94.     Plaintiff repeats and realleges paragraphs 1 through 23, supra, and incorporates same by reference, as though fully set forth in full herein.


COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 27 -

95.     On May 10, 2013, plaintiff filed a charge of discrimination with the California Department o Fair Employment and Housing.

96.     Defendant's employee(s) took the following actions against plaintiff: Demoted plaintiff from his position, and offered plaintiff unfair compensation and reduced benefits.

97.     The actions of defendant's employees were caused by and were in retaliation for the protected activity of plaintiff set forth above in that the actions were taken after plaintiff filed a claim of discrimination with the Department of Fair Employment and Housing.

98.     Despite defendant's actual/constructive knowledge of the above-mentioned retaliation, and the knowledge of its supervisors and agents, defendant failed to take immediate and appropriate corrective action to stop the retaliation. Furthermore, before the retaliation occurred, defendant failed to take all reasonable steps to prevent such retaliation from occurring.

WHEREFORE, plaintiff prays judgment as set forth below.


### EIGHTH CAUSE OF ACTION

### [AGE DISCRIMINATION]

### [Government Code section 12940(a), 29 USC section 623]

### [AGAINST ALL DEFENDANTS]

99.     Plaintiff repeats and realleges paragraphs 1 through 28, inclusive, and incorporates same by reference, as though set forth in full herein.

100.    In or about June, 2011, plaintiff, an individual over forty (40) years of age, developed a mental disability consisting of severe mental depression. Defendants, and each of them, were aware of plaintiff's mental disability because plaintiff informed them of same on or about March,


COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 28 -

2012. Defendants, and each of them, were also aware of plaintiff's disability prior to that time because they had observed this condition in plaintiff.

101.    From June, 2011, until the present date, defendant MORGAN STANLEY discriminated against plaintiff because of his age by failing to provide information to plaintiff regarding his rights under the Americans with Disabilities Act, the California Family Rights Act, and the Federal Medical Leave Act.

102.    From May 2012 to the present date, defendants, and each of them, further discriminated against plaintiff because of his age by failing to give plaintiff the necessary medical leave to treat his disability, instead demoting plaintiff to a lower position.

103.    Defendant's demotion of plaintiff, failure to provide information regarding his legal rights, and failure to provide time off constitute disparate treatment in that it was also based on the fact that plaintiff is an individual over forty years of age under FEHA 12940(a), 29 USC section 623, and a  disabled person under Government Code section 12926(j)(1), and 12926.1(b), and [c]. Defendant intentionally demoted plaintiff, and refused to give plaintiff information and necessary medical leave,  plaintiff, because he is a disabled person over forty years of age.

104.    Defendant's discriminatory actions against plaintiff, as alleged above, constituted unlawful discrimination in employment on account of medical disability, in violation of Government Code section 12940(a)(1).

105.    As a proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that plaintiff has suffered the loss of the wages, salary, benefits, and additional amounts of money plaintiff would have received if plaintiff had been retained in his same position. As a result of such discrimination and consequent harm, plaintiff

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 29 -

has suffered damages in an amount according to proof.

106.    As a further proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that plaintiff has suffered the intangible loss of such employment-related opportunities as experience in the position held by plaintiff. As a result of such discrimination and consequent harm, plaintiff has suffered damages in an amount according to proof.

107.    As a further proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body.  As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof.

108.    The above-recited actions of defendant were done with malice, fraud, or oppression, and in reckless disregard of the plaintiff's rights under FEHA.

109.    No adequate remedy exists at law for the injuries suffered by plaintiff herein, insofar as the employment opportunity that defendant has denied to plaintiff cannot be secured absent injunctive relief. If this court does not grant injunctive relief of the type and for the purpose specified below, plaintiff will suffer irreparable injury. Therefore, plaintiff requests the following injunctive relief: requiring defendant MORGAN STANLEY to rehire plaintiff for the employment position previously held by plaintiff.

110.    On May 10, 2013, and within one year of the date of the discrimination committed by defendant, plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing. A copy of this charge is appended hereto, marked Exhibit A, and is

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 30 -

incorporated by this reference as though fully set forth.

111.    On May 10, 2013, the DFEH issued to plaintiff a notice of right to bring a civil action based on the charge that is Exhibit G to this complaint. A copy of this notice of right of action is appended hereto, marked Exhibit G

WHEREFORE, plaintiff prays judgment as set forth below.

## NINTH CAUSE OF ACTION

### EMPLOYMENT DISCRIMINATION–DEMOTION

### (AGAINST ALL DEFENDANTS)

112.    Plaintiff repeats and realleges paragraphs 1 through 41, supra, and incorporates same by reference, as though fully set forth in full herein.

113.    The actions taken against plaintiff violate public policy as set forth in the California Fair Employment and Housing Act, Government Code section 12940(a).

114.    As a proximate result of plaintiff's conduct as described above, defendant demoted Plaintiff

115.    As a proximate result of defendant's conduct, plaintiff has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, all to his damage in an amount to be established at the time of trial.

116.    In doing the acts set forth above, defendants knew that their conduct violated plaintiff's rights under FEHA. Notwithstanding this knowledge, defendant despicably subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights by demoting/and/or terminating plaintiff's employment. This oppressive conduct was committed by Defendants

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 31 -

whose conduct warrants the assessment of punitive damages.

117. Defendant MORGAN STANLEY ratified the conduct of the other Defendants retaining the employee after learning of his conduct toward plaintiff and failing and refusing to discipline and/or reprimand him. WHEREFORE, plaintiff prays judgment as set forth below.

## TENTH CAUSE OF ACTION

### (FAILURE TO PREVENT DISCRIMINATION/HARASSMENT)

### [Government Code section 12940(k)]

### AGAINST ALL DEFENDANTS

118. Plaintiff repeats and realleges paragraphs 1 through 47, supra, and incorporates same by reference, as though fully set forth in full herein.

119. Government Code section 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring in the workplace.

120. Defendants violated Government Code section 12940 with regard to plaintiff when defendants knowingly and recklessly created a hostile work environment for

121. plaintiff on the basis of his disability and/or medical condition, failed to conduct reasonable and impartial investigations when plaintiff complained about discriminatory conduct on the part of supervisors and management, and failed to take reasonable steps necessary to investigate the misconduct and prevent it from occurring and continuing.

122. Defendants' conduct toward plaintiff, as alleged above, constitutes an unlawful employment practice in violation of California Government Code section 12940.

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

123.   As a direct and proximate result of defendants' conduct, plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

124.   Defendant's actions have caused and continue to cause plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorney's fees, medical expenses, future earnings and benefits, costs of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

125.   The acts of these defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure plaintiff and to cause plaintiff mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe, or further severe, emotional harm to plaintiff and with the intent to injure plaintiff, constituting oppression, fraud, or malice, under California Code section 3924, entitling plaintiff to punitive damages against these defendants.

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as set forth below.

## ELEVENTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT)

### (AGAINST DEFENDANT MORGAN STANLEY)

126.   Plaintiff repeats and realleges Plaintiff repeats and realleges paragraphs 1 through 54, supra, and incorporates same by reference, as though fully set forth in full herein.

127.   The California Family and Medical Leave Act, California Government Code section

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 33 -

12945.2(l) specifically requires employers not to discriminate against any employee on the basis of the need to take a leave of absence for a bona fide reason and to place that employee in the same or comparable position when he returns to work.

128.     Defendants' mistreatment of plaintiff in the terms and conditions of his employment, as alleged above, constitutes unlawful discrimination in violation of the California Family and Medical Leave Act (Cal. Gov't Code section 12945.2).

129.     As a direct, foreseeable and legal result of defendant's unlawful acts, plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses and other employment benefits, and has suffered and continued to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to plaintiff's damage in an amount to be proven at the time of trial.

130.     Defendants committed the despicable acts as herein alleged maliciously, fraudulently, and oppressively, with the wrongful intent of injuring plaintiff, and have acted with an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights. Because the despicable acts taken toward plaintiff  were carried out by managerial employees of MORGAN STANLEY, acting in a deliberate, cold, callous and intentional manner in order to injure and damage plaintiff, he is entitled to recover punitive damages from defendant in an amount according to proof.

131.     By reason of defendant's unlawful conduct, and in order to enforce the important rights to a discrimination and harassment-free workplace for himself and the public at large, plaintiff has incurred and continues to incur legal expenses and attorney's fees. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses per Code of Civil Procedure section

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 34 -

1021.5 and Government Code section 12965(b).

WHEREFORE, plaintiff prays judgment as set forth below.

## TWELTFH CAUSE OF ACTION

### [VIOLATION OF FEDERAL FAMILY AND MEDICAL LEAVE ACT]

### [AGAINST DEFENDANT MORGAN STANLEY]

132.   Plaintiff repeats and realleges paragraphs 1 through 60, supra, and incorporates same by reference, as though fully set forth in full herein.

133.   Defendant MORGAN STANLEY employs more than fifty workers and as such must grant unpaid family care and medical leave under certain circumstances. 29 USC sections 2911(4), 2612.

134.   The Family and Medical Leave Act, 29 USC section 2601, et seq., specifically requires employers not to discriminate against any employee on the basis of the need to take a leave of absence for a bona fide reason and to place that employee in the same or comparable position when he returns to work. 29 USC section 2601(b)(4), 2614(a)(1).

135.   Defendants' mistreatment of plaintiff in the terms and conditions of his employment, as alleged above, constitutes unlawful discrimination in violation of the Family and Medical Leave Act [29 USC section 2601(b)(4).]

136.   As a direct, foreseeable and legal result of defendant's unlawful acts, plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses and other employment benefits, and has suffered and continued to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to plaintiff's damage in an amount to be proven at the

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

time of trial.

137.   Defendants committed the despicable acts as herein alleged maliciously, fraudulently, and oppressively, with the wrongful intent of injuring plaintiff, and have acted with an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights. Because the despicable acts taken toward plaintiff were carried out by managerial employees of MORGAN STANLEY, acting in a deliberate, cold, callous and intentional manner in order to injure and damage plaintiff, he is entitled to recover punitive damages from defendant in an amount according to proof.

138.   By reason of defendant's unlawful conduct, and in order to enforce the important rights to a discrimination and harassment-free workplace for himself and the public at large, plaintiff has incurred and continues to incur legal expenses and attorney's fees. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses per 29 USC section 2617(a)(3).

WHEREFORE, plaintiff prays judgment as set forth below.


### THIRTEENTH CAUSE OF ACTION

### [RESCISSION OF CONTRACT]

### [AGAINST DEFENDANT MORGAN STANLEY]

139.   Plaintiff repeats and realleges paragraphs 1 through 67, supra, and incorporates same by reference, as though fully set forth in full herein.

140.   On or about December 30, 2011, at San Francisco, California, plaintiff and defendant entered into a written contract entitled "Former Financial Advisor Program Commitment Agreement." This agreement purported in part to impose a two percent (2%) share of accounts

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 36 -

attributed to the agreement, an unreasonable requirement imposed on plaintiff by defendants.

141. The consent of plaintiff to the alleged agreement was not real, mutual or free, in that it was obtained through undue influence as herein alleged.

142. At the time that plaintiff signed the agreement, he was under severe mental and emotional strain due to mental disability, and was heavily medicated and on medical leave from defendant's place of employment.

143. While plaintiff was in this condition and unable to think clearly, he was required to sign a new partnership agreement. Defendant demanded that this agreement and other related documents be signed at once.

144. Because of plaintiff's belief in defendant's representations, defendant was able to substitute their will and judgment in place of plaintiff's and thus obtain plaintiff's signature to the agreements. Consent would not have been given but for this undue influence.

145. Plaintiff seeks rescission of the contract because plaintiff has no other adequate remedy at law. If the contract is not rescinded, plaintiff will suffer irreparable harm and injury because he will be unfairly deprived of his position and benefits.

146. Plaintiff intends service of the summons and complaint in this action to serve as notice of rescission of the contract.

WHEREFORE, plaintiff prays judgment as set forth below.


**FOURTHEENTH CAUSE OF ACTION**

**[DECLARATORY RELIEF]**

**[AGAINST DEFENDANT MORGAN STANLEY]**


COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 37 -

147.   Plaintiff repeats and realleges the preceding paragraphs by reference, as though fully set forth in full herein.

148.   Plaintiff and Defendants entered into an agreements.

149.   An actual controversy has arisen and now exists between plaintiff and defendant concerning their respective rights and duties in that plaintiff contends that the agreement is invalid as the product of undue influence, whereas defendant disputes these contentions and contends that the agreement is valid.

150.   Plaintiff desires a judicial determination of his rights and duties, and a declaration as to whether the written agreement is valid.

151.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that plaintiff may ascertain his rights and duties under the written agreement. The agreement has caused plaintiff considerable financial burden and detriment as it fails to adequately or fairly compensate plaintiff.

WHEREFORE, plaintiff prays judgment as set forth below.

### PRAYER FOR DAMAGES

1. For back pay, front pay, and other monetary relief according to proof;

2. For general damages according to proof;

3. For punitive damages in an amount appropriate to punish defendant for its wrongful conduct and set an example for others;

4. For interest on the sum of damages awarded, calculated from the date that discrimination first began, to the date of judgment;

5. For preliminary and permanent injunctive relief as specified in paragraph 16;

### COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 38 -

6. For reasonable attorney's fees pursuant to Government Code section 12965(b);

7. For costs of suit incurred herein, and

8. For such other and further relief as the court may deem just and proper.

9. For a money judgment representing compensatory damages including lost wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

10. For punitive damages, according to proof;

11. For costs of suit;

12. For reasonable attorney's fees according to proof;

13. For statutory relief and damages alleged herein

13. For such other and further relief as the court may deem just and proper.

DATED: May 2, 2014                                    SHEA LAW OFFICES

By: _____

Mary Shea Hagebols, Esq.

Attorney for Robert Appleby

## REQUEST FOR JURY TRIAL

Robert Appleby hereby requests a jury trial in the within matter.

DATED: May 2, 2014                                    SHEA LAW OFFICES

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 39 -

By: _____

Mary Shea Hagebols

Attorneys for Robert Appleby

COMPLAINT FOR DAMAGES/DEMAND FOR JURY TRIAL

- 40 -

EXHIBIT "A"

EXHIBIT A

The Cypress Group - Morgan Stanley Team - SAN FRANCISCO, CA                Page 1 of 4



CLOSE X

Loading Image...

Morgan Stanley

Maynard Lichterman, CFP®
Senior Vice President
Financial Advisor
tel: (415) 984-6026
toll-free: (800) 269-9060
fax: (415) 984-6596
Email Me
Professional Details

Certified Financial Planner™, 1988
College of Financial Planning
Denver, CO

B.S. - Business Administration, 1988
Roosevelt University
Chicago, IL

Smith Barney Chartered
Council Member

Rotary Club of North Oakland
Past President
Emeryville, CA

Temple Isaiah
Past President

Smith Barney Chairman's Council
Member

Maynard Lichterman, CFP® holds the following registrations:
Securities Agent: AR, CA, CO, FL, GA, HI, ID, IL, IN, LA, MA, MD, MI, MN, NJ, NM, NV, NY, OH, OK, OR, PA, TX, VA, WA; General Securities Representative; Investment Advisor Representative; Futures;

Walter Stevenson
Senior Vice President
Financial Advisor
Portfolio Manager
tel: (415) 984-6737
toll-free: (800) 269-9060
fax: (415) 984-6596
Email Me
Professional Details

EXHIBIT-A

The Cypress Group - Morgan Stanley Team - SAN FRANCISCO, CA                    Page 2 of 4



present: Morgan Stanley*
Vice President
Manager / Financial Advisor
Stevenson Capital Management in 1983
Experience with a Major West Coast Firm Prior to Founding Stevenson Capital Management
Seat on the Pacific Stock Exchange in the Late 1970's
holds the following registrations:
Agent: AR, CA, ID, MA, NM, OR, TX, VA, WA; General Securities Representative; Investment Advisor Representative

John S. Lin, CFP®
First Vice President
Financial Advisor
Senior Investment Management Consultant
Financial Planning Specialist
tel: (415) 984-6638
toll-free: (800) 289-9060
fax: (415) 984-6596
Email Me



FOLLOW ME ON Linked

Professional Details
  B.S. - International Business, 1999
  Cal Poly Pomona

  Certified Financial Planner™

  Morgan Stanley* Financial Planning Specialist Designation

  Financial Services Industry Experience since 2000

  Series 7, 31, 63, 65, Long Term Care & Life Insurance Licensed

  Blue Chip Council - Smith Barney

John S. Lin, CFP® holds the following registrations:
Securities Agent: AR, CA, CO, FL, HI, ID, IL, IN, LA, MA, MD, MI, MN, NJ, NM, NV, NY, OH, OK, OR, PA, TX, VA, WA; General Securities Representative; Investment Advisor Representative;
Futures;



Julie Baeder, CIMA®, CDFA™
First Vice President
Financial Advisor
Senior Investment Management Specialist
tel: (415) 984-6005
toll-free: (800) 289-9060
fax: (415) 984-6596
Email Me
Professional Details
  Investment Industry Experience Since 1992

  Licenses Held: Series 7, 65, 63, 31 and Insurance

  Certified Divorce Financial Analyst™ Designation

  Certified Investment Management Analyst℠

  Current Boards:
  Girl's Inc. of Alameda County
  Prevention International: No Cervical Cancer

The Cypress Group - Morgan Stanley Team - SAN FRANCISCO, CA                 Page 3 of 4



Memberships:
Hispanic Women of Impact
United Way Women's Leadership Council
National Organization of Women Business Owners
Divorce Management Consultant's Association
Institute for Divorce Financial Analysts
Member of the San Francisco Commission on the Status of Women

Morgan Stanley Blue Chip Council
2006, 2007, 2008
San Francisco Business Times Most Influential Women in Business

CDFA® , CDFA™  holds the following registrations:
AZ, AR, CA, CO, CT, FL, HI, ID, IL, IN, LA, MA, MO, MI, MN, NJ, NM, NV, NY, OH, OK, OR, PA, SC

Patricia Ramirez
Financial Advisor
tel: (415) 984-6737
toll-free: (800) 289-9060
fax: (415) 984-6596
Email Me
Professional Details
  Investment Industry Experience Since 1990

  Licenses Held: Series 7, 9, 10, 63, 66 and Insurance and Annuity

  Memberships:
  National Association of Professional Women

  Boards:
  Morgan Stanley San Francisco Complex Diversity Council Board

  Financial Planning Associate

Patricia Ramirez holds the following registrations:
BM/Supervisor; Securities Agent: AR, CA, CO, DC, FL, HI, ID, IL, IN, LA, MA, MD, MI, MN, NJ, NM, NV, NY, OH, OK, OR, PA, TX, VA, WA; General Securities Representative; Investment Adv

Chris Freitas
Registered Client Service Associate
tel: 415-984-6034
chris.freitas@morganstanley.com
Professional Details
  Manages Team Operations and Client Experience

  Series 7, Series 66, and California Life Insurance Licensed

  Bachelor's Degree, Cum Laude, Sonoma State University, 2012

  Investment Banking Institute Graduate

  Operation Iraqi and Enduring Freedom U.S. Navy Veteran

  Master Mason in the Freemasons

Sheila Gladney
Client Service Associate
tel: 415-984-6035
fax: 415-984-6596
Sheila.gladney@morganstanley.com

The Cypress Group - Morgan Stanley Team - SAN FRANCISCO, CA          Page 4 of 4



This information, products and services described here are intended only for individuals residing in states where this Financial Advisor is properly registered.
Morgan Stanley reserves the right, to the extent permitted under applicable law, to retain and monitor all electronic communications. Morgan Stanley will not accept purchase or sell orders via
messaging systems. Morgan Stanley does not endorse and is not responsible and assumes no liability for content, products or services posted by third-parties on any internet site, social media
communications are subject to terms available at the following link: http://www.morganstanley.com/disclaimers/masbemail.html. Any profiles and associated content are for U.S. residents only
*References to length of service at Morgan Stanley include years at Morgan Stanley and predecessor firms.
Morgan Stanley Smith Barney LLC and its affiliates do not provide tax or legal advice. To the extent that this material or any attachment concerns tax matters, it is not intended to be used and
avoiding penalties that may be imposed by law. Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.
The securities/instruments, investments and investment strategies discussed in this material may not be suitable for all investors. The appropriateness of a particular investment or investment
circumstances and objectives. The views and opinions expressed on this website do not necessarily reflect those of Morgan Stanley.
Certified Financial Planner™ Board of Standards Inc. owns the certification marks CFP®, CERTIFIED FINANCIAL PLANNER™ and CFP® (with flame logo)® in the U.S. which it awards to indi-
initial and ongoing certification requirements.
Investment Management Consultants Association, Inc. owns the marks CIMA®, Certified Investment Management Analysis™ (with graph element)®, and Certified Investment Management Ana-
The use of the CDFA™ designation does not permit the rendering of legal advice by Morgan Stanley or its Financial Advisors which may only be done by a licensed attorney. The CDFA™ des-
Stanley or its Financial Advisors are acting as experts in this field.
Awards Disclosures

©2014 Morgan Stanley Smith Barney LLC. Member SIPC. All rights reserved

Privacy & Cookies | Terms of Use | Disclosures | Morgan Stanley Smith Barney LLC Financial Statement | Morgan Stanley & Co. LLC Financial Statement

EXHIBIT "B"

# EXHIBIT B

SPLIT # _____164-165_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

**WHEREAS,** this Agreement ("Joint Production Arrangement") was originally entered into on _Sept. 22_, 2011 (commencement date) solely for the convenience of [R. Appleby] ("Joint Producer 'A'"), [M. Lichterman] ("Joint Producer 'B'"), [J. Bader] ("Joint Producer 'C'"), [J. Lin] ("Joint Producer 'D'"), [S. Brisbing] ("Joint Producer 'E'"), [M. Baumer] ("Joint Producer 'F'") and [S. Larson] ("Joint Producer 'G'") (herein collectively the "Joint Producers") and is being amended on _Nov. 28_, 2012 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

**NOW, THEREFORE,** the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)     Joint Producer A _1_ %, and Joint Producer B _6.50_ %

Joint Producer C _6.25_ %, Joint Producer D _6.25_ %, Joint Producer E _45_ %, Joint Producer F _2.50_ %, Joint Producer G _2.50_ % ;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

_11-28-2012_
DATE

_11/28/12_
DATE

_11/30_
DATE

_11/29/12_
DATE

_____
DATE

_____
DATE

_____
DATE

X _____
Joint Producer A

_____
Joint Producer B  M. Lichterman

_____
Joint Producer C  J. Bader

_____
Joint Producer D  J. Lin

_____
Joint Producer E  S. Brisbing

_____
Joint Producer F  M. Baumer

_____
Joint Producer G  S. Larson

Reviewed For Morgan Stanley Smith Barney LLC

By: _____          Date: _11/29/12_
     Branch Manager

**EXHIBIT-B**

MS000006

SPLIT # _____164-165_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

WHEREAS, this Agreement ("Joint Production Arrangement") was originally entered into on _Sept. 22_, 2011 (commencement date) solely for the convenience of R. Appleby ("Joint Producer 'A'"), M. Lichterman ("Joint Producer 'B'"), J. Baeder ("Joint Producer 'C'"), J. Lin ("Joint Producer 'D'"), S. Brisbing ("Joint Producer 'E'"), M. Baumer ("Joint Producer 'F'") and G. Larson ("Joint Producer 'G'") (herein collectively the "Joint Producers") and is being amended on _Nov. 28_, 2012 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)     Joint Producer A __1__%, and Joint Producer B 46.50%

Joint Producer C 16.25%, Joint Producer D 16.25%, Joint Producer E 45 %, Joint Producer F 2.50%, Joint Producer G 2.50% ;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

___11-28-2012___          _____
DATE                      Joint Producer A

_____          _____
DATE                      Joint Producer B M. Lichterman

_____          _____
DATE                      Joint Producer C J. Baeder

_____          _____
DATE                      Joint Producer D J. Lin

___12/3/12___          _____
DATE                      Joint Producer E S. Brisbin

_____          _____
DATE                      Joint Producer F M. Baumer

___12/11/12___          _____
DATE                      Joint Producer G G. Larson

Reviewed For Morgan Stanley Smith Barney LLC

By: _____          Date: ___12/20/12___
    Branch Manager

1

MS000007

EXHIBIT "C"

EXHIBIT C

SPLIT # _____164-292_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

     **WHEREAS,** this Agreement ("Joint Production Arrangement") was originally entered into on *Sept 30* , 20ǁ (commencement date) solely for the convenience of [*R. Appleby* ] ("Joint Producer 'A'"), [*M. Lichterman* ] ("Joint Producer 'B'"), [ *J. Baeder* ] ("Joint Producer 'C'") [ *J. Lin* ] ("Joint Producer 'D'") and [*W. Stevenson* ] ("Joint Producer 'E'") (herein collectively the "Joint Producers") and is being amended on __*NOV . 28*__, 20Ị2 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

     **NOW, THEREFORE,** the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

     As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)    Joint Producer A __*/* %__, and Joint Producer B *19.2%*

Joint Producer C *19.25*%, Joint Producer D *19.25*%, Joint Producer E *41.24*%, ;

     By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

*11-28-2012*
_____
DATE

*11/28/2012*
_____
DATE

*11/30/12*
_____
DATE

*11/29/12*
_____
DATE

_____
DATE

X _____
Joint Producer A

_____ *M. Lichterman*
Joint Producer B

_____ *J. Baeder*
Joint Producer C

_____ *J. Lin*
Joint Producer D

_____ *W. Stevenson*
Joint Producer E

Reviewed For Morgan Stanley Smith Barney LLC

By: _____
    Branch Manager

Date: *11/29/12*

**EXHIBIT- C**

1

MS000008

SPLIT # _____164-292_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

WHEREAS, this Agreement ("Joint Production Arrangement") was originally entered into on _Sept 30_ , 2011 (commencement date) solely for the convenience of [R. Apptby] ("Joint Producer 'A'"),[M. Lichtrman]("Joint Producer 'B'") , [ J. Bacdor ] ("Joint Producer 'C'") [J. Lin     ] ("Joint Producer 'D'") and [W. Stevnson] ("Joint Producer 'E'") (herein collectively the "Joint Producers") and is being amended on ___nov . 28_, 2012 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)     Joint Producer A _1_ %, and Joint Producer B 19.26%

Joint Producer C 19.25%, Joint Producer D 19.25%, Joint Producer E 41.24%, ;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

_11-28-2012_
DATE

_11/28/2012_
DATE

_11/30/12_
DATE

_11/29/12_
DATE

_12/3/12_
DATE

X _____
Joint Producer A

_____
Joint Producer B M. Lichterman

_____
Joint Producer C J. Baeder

_____
Joint Producer D J. Lin

_____
Joint Producer E W. Stevenson

Reviewed For Morgan Stanley Smith Barney LLC

By: _____          Date: _11/29/12_
     Branch Manager

1

MS000009

SPLIT # __164-292__

### AMENDMENT TO JOINT PRODUCTION AGREEMENT

WHEREAS, this Agreement ("Joint Production Arrangement") was originally entered into on __September 30, 2011__ (commencement date) solely for the convenience of [R. APPLEBY] ("Joint Producer 'A'"), [M. LICHTERMAN] ("Joint Producer 'B'"), [J. BAEDER] ("Joint Producer 'C'"), [J. LIN] ("Joint Producer 'D'"), [W. STEVENSON] ("Joint Producer 'E'") (herein collectively the "Joint Producers") and is being amended on __January 1, 2013__, to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)     Joint Producer A __1__ %, Joint Producer B __14.69__ %, Joint Producer C __14.69__ %, Joint Producer D __14.69__ %, Joint Producer E __54.93__ %;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

DATE _____

DATE _12/28/2012_

DATE _12/27/2012_

DATE _12/27/2012_

DATE _____

_FA on LTD_
Joint Producer A [R. APPLEBY]

Joint Producer B [M. LICHTERMAN]

Joint Producer C [J. BAEDER]

Joint Producer D [J. LIN]

_See Attached_
Joint Producer E [W. STEVENSON]

Reviewed For Morgan Stanley Smith Barney LLC

By: _____          Date: _12/27/12_
        Branch Manager

1

MS000004

*164-292*

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

    **WHEREAS**, this Agreement ("Joint Production Arrangement") was originally entered into on __September 30, 2011__ (commencement date) solely for the convenience of [R. APPLEBY] ("Joint Producer 'A'"), [M. LICHTERMAN] ("Joint Producer 'B'"), [J. BAEDER] ("Joint Producer 'C'"), [J. LIN] ("Joint Producer 'D'"), [W. STEVENSON] ("Joint Producer 'E'") (herein collectively the "Joint Producers") and is being amended on __January 1, 2013__, to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

    **NOW, THEREFORE**, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

    As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)    Joint Producer A __1__ %, Joint Producer B __14.69__ %, Joint Producer C __14.69__ %, Joint Producer D __14.69__ %, Joint Producer E __54.93__ %;

    By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

| | |
|---|---|
| _____ DATE | _____ Joint Producer A [R. APPLEBY] |
| _____ DATE | _____ Joint Producer B [M. LICHTERMAN] |
| _____ DATE | _____ Joint Producer C [J. BAEDER] |
| _____ DATE | _____ Joint Producer D [J. LIN] |
| *12·27·12* DATE | *W. Stevenson* Joint Producer E [W. STEVENSON] |

Reviewed For Morgan Stanley Smith Barney LLC

By: _____    Date: __12/27/12__
     Branch Manager

1

MS000005

EXHIBIT "D"

EXHIBIT D

SPLIT # ___164-296_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

      **WHEREAS,** this Agreement ("Joint Production Arrangement") was originally entered into on _Sept. 22_, 2011 (commencement date) solely for the convenience of [R. Appleby] ("Joint Producer 'A'"), [M. Lichterman] ("Joint Producer 'B'"), [J. Barder] ("Joint Producer 'C'") and [J. Lin ] ("Joint Producer 'D'") (herein collectively the "Joint Producers") and is being amended on _Nov. 28_, 2012 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

      **NOW, THEREFORE,** the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

      As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)    Joint Producer A _1_%, and Joint Producer B _29.75_%

Joint Producer C _34.65_%, Joint Producer D _34.60_%;

      By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

_11-2-8-2012_
DATE

     X _____
     Joint Producer A

_11/28/12_
DATE

     _____
     Joint Producer B  M. Lichterman

_11/20/12_
DATE

     _____
     Joint Producer C  J. Barder

_11/29/12_
DATE

     _____
     Joint Producer D  J. Lin

Reviewed For Morgan Stanley Smith Barney LLC

By: _____     Date: _11/29/12_
    Branch Manager

**EXHIBIT-D**

1

MS0000011

EXHIBIT "E"

EXHIBIT E

SPLIT # ___164-298_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

WHEREAS, this Agreement ("Joint Production Arrangement") was originally entered into on _Sept. 22_, 2011 (commencement date) solely for the convenience of [R Appleby] ("Joint Producer 'A'"), [M. Uchterman] ("Joint Producer 'B'"), [J. Baeder] ("Joint Producer 'C'") and [J. Lin] ] ("Joint Producer 'D'") (herein collectively the "Joint Producers") and is being amended on _Nov. 28_, 2012 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)   Joint Producer A _1_%, and Joint Producer B _38.90_%

Joint Producer C _25.40_%, Joint Producer D _34.70_%;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

_11-28-2012_
DATE

_11/28/12_
DATE

_11/28/12_
DATE

_11/29/12_
DATE

x _M. Cruley_
Joint Producer A

_M. Uchterman_
Joint Producer B

_J. Baeder_
Joint Producer C

_J. Lin_
Joint Producer D

Reviewed For Morgan Stanley Smith Barney LLC

By: _____   Date: _11/29/12_
Branch Manager

**EXHIBIT E**

MS0000012

EXHIBIT "F"

EXHIBIT F

SPLIT # _____164-301_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

**WHEREAS**, this Agreement ("Joint Production Arrangement") was originally entered into on _Oct. 17, 2011_ (commencement date) solely for the convenience of [ _R. Appleby_ ] ("Joint Producer 'A'"), [_M. Lichterman_] ("Joint Producer 'B'"), [ _J. Boeder_ ] ("Joint Producer 'C'") [ _J. Lin_ ] ("Joint Producer 'D'") [_W. Stevenson_] ("Joint Producer 'E'"), [ _C. Koren_ ] ("Joint Producer 'F'") and [_R. Harper_] ("Joint Producer 'G'") (herein collectively the "Joint Producers") and is being amended on _Nov. 28, 2012_ to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

**NOW, THEREFORE**, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)     Joint Producer A _1_ %, and Joint Producer B _7.25_ %

Joint Producer C _7.25_ %, Joint Producer D _7.25_ %, Joint Producer E _7.25_ %, Joint Producer F _15_ %, Joint Producer G _15_ %;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

_11-28-2012_
DATE

X _M. Appleby_
Joint Producer A

_11/28/12_
DATE

_M. Lichterman_
Joint Producer B   M. Lichterman

_11/30/12_
DATE

_J. Boeder_
Joint Producer C   J. Boeder

_11/22/12_
DATE

_J. Lin_
Joint Producer D   J. Lin

_____
DATE

Joint Producer E   W. Stevenson

_____
DATE

Joint Producer F   C. Koren

_____
DATE

Joint Producer G   R. Harper

Reviewed For Morgan Stanley Smith Barney LLC

By: _____        Date: _11/29/12_
    Branch Manager



**EXHIBIT-E**
MS0000013

SPLIT # _____164-301____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

WHEREAS, this Agreement ("Joint Production Arrangement") was originally entered into on Oct. 17, 2011 (commencement date) solely for the convenience of [ R. Appleby ] ("Joint Producer 'A'"), [ M. Lichterman ] ("Joint Producer 'B'"), [ J. Bacder ] ("Joint Producer 'C'") [ J. Lin ] ("Joint Producer 'D'") [ W. Stevenson ] ("Joint Producer 'E'"), [ C. Koren ] ("Joint Producer 'F'") and [ R. Harper ] ("Joint Producer 'G'")  (herein collectively the "Joint Producers") and is being amended on Nov. 28, 2012 to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(a)     Joint Producer A  1 %, and Joint Producer B 7.25 %

Joint Producer C 7.25 %, Joint Producer D 7.25 %, Joint Producer E 7.25 %, Joint Producer F 15 %, Joint Producer G 15 % ;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

11-28-2012
DATE                                      X _____ Joint Producer A

11/28/12
DATE                                      _____ Joint Producer B  M. Lichterman

11/30/12
DATE                                      _____ Joint Producer C  J. Bacder

11/22/12
DATE                                      _____ Joint Producer D  J. Lin

12/3/12
DATE                                      _____ Joint Producer E  W. Stevenson

_____
DATE                                      _____ Joint Producer F  C. Koren

_____
DATE                                      _____ Joint Producer G  R. Harper
Reviewed For Morgan Stanley Smith Barney LLC

By: _____              Date: ___11/29/12___
      Branch Manager

1.

MS0000014

12/13/2012 13:37 FAX   510 845 7288        MSSB                                    ☒0001/0001

11/28/2012  18:36   4159846586            MORGAN STANLEY N                    PAGE  03/03

SPLIT # _____ 164-301_____

## AMENDMENT TO JOINT PRODUCTION AGREEMENT

**WHEREAS**, this Agreement ("Joint Production Arrangement") was originally entered into on *Oct. 17, 2011* (commencement date) solely for the convenience of [ *R. Appleby* ] ("Joint Producer 'A'"), [*M. Uchterman*] ("Joint Producer 'B'"), [ *J. Bacder* ] ("Joint Producer 'C'"), [ *J. Lin* ] ("Joint Producer 'D'"), [*W. Stevenson*] ("Joint Producer 'E'"), [ *C. Koren* ] ("Joint Producer 'F'") and [*R. Harper* ] ("Joint Producer 'G'") (herein collectively the "Joint Producers") and is being amended on _____, 20__, to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley Smith Barney LLC's ("MSSB's") (or any of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities (including, but not limited to, Morgan Stanley & Co. Incorporated) ownership of client accounts and documents, and confidential company records and information.

**NOW, THEREFORE**, the Joint Producers agree that this Amendment is intended to modify the existing Joint Production Arrangement solely as follows:

As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:

(A)      Joint Producer A ___/___ %, and Joint Producer B ⎣7.25⎦%

Joint Producer C ⎣7.25⎦%, Joint Producer D⎣7.25⎦%, Joint Producer E ⎣7.25⎦%, Joint Producer F ⎣15⎦ %, Joint Producer G ⎣15⎦% ;

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of this Amendment.

*11-28-2012*
_____          _____
DATE                             Joint Producer A

_____          Joint Producer B  *M. Uchterman*
DATE

_____          Joint Producer C  *J. Bacder*
DATE

_____          Joint Producer D  *J. Lin*
DATE

_____          Joint Producer E  *W. Stevenson*
DATE

*12/13/12*
_____          Joint Producer F  *C. Koren*
DATE

*12/10/12*
_____          Joint Producer G  *R. Harper*
DATE
Reviewed For Morgan Stanley Smith Barney LLC

_____          Date  *12/20/12*

MS0000015

EXHIBIT "G"

# EXHIBIT G



STATE OF CALIFORNIA | State and Consumer Services Agency        GOVERNOR EDMUND G. BROWN JR.
                                                                          DIRECTOR PHYLLIS W. CHENG

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

May 10, 2013

Robert Appleby
2374 Union Street
San Francisco, CA 94123

RE: **Notice of Case Closure and Right to Sue**
    DFEH Matter Number: 117728-51548
    Right to Sue: Appleby / Morgan Stanley Smith Barney LLC

Dear Robert Appleby:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 10, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

**This letter is also your Right to Sue notice.** According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc:  Agent for Service for Morgan Stanley Smith Barney LLC



EXHIBIT-G



STATE OF CALIFORNIA | State and Consumer Services Agency                    GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

May 10, 2013

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 117728-51548
Right to Sue: Appleby / Morgan Stanley Smith Barney LLC,

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment
and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the
complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file
a lawsuit. This case is not being investigated by the DFEH and is being closed immmediately. A copy of the
Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA I Department of Fair Employment and Housing                                                EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
**117728-51548**

---

COMPLAINANT
**Robert Appleby**

---

NAMED IS THE EMPLOYER, PERSON, AGENCY, ORGANIZATION OR GOVERNMENT ENTITY WHO DISCRIMINATED AGAINST ME

| RESPONDENT | ADDRESS | PHONE |
|---|---|---|
| Morgan Stanley Smith Barney LLC, | 1 New York Plaza -- 7th Floor  New York City NY 10004 | |

| AGENT FOR SERVICE | ADDRESS | PHONE |
|---|---|---|
| , CT Corporation System -- Morgan Stanley Dean Witter LLC | 818 West Seventh Street Second Floor Los Angeles CA 90017 | |

| NO. OF EMPLOYEES | MOST RECENT DISCRIMINATION TOOK PLACE | TYPE OF EMPLOYER |
|---|---|---|
| 20000 | May 10, 2013 | Private Employer |

| CO-RESPONDENT(S) | | ADDRESS |
|---|---|---|



STATE OF CALIFORNIA | Department of Fair Employment and Housing                                              EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE
## CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
117728-51548

| | |
|---|---|
| I ALLEGE THAT I EXPERIENCED | Discrimination, Harassment, Retaliation |
| ON OR BEFORE | May 10, 2013 |
| BECAUSE OF MY | Age - 40 and over, Disability, Engagement in Protected Activity, Family Care or Medical Leave |
| AS A RESULT, I WAS | Demoted, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation |

STATEMENT OF FACTS

I have been employed by Morgan Stanley Smith Barney LLC for the last 18 plus years and, in combination with predecessor firms, a combined total of 25 years. I am over 40 years old. My date of birth is September 27, 1951. I am a disabled person and was otherwise qualified to perform the duties and responsibilities of my job [financial analyst] had I been afforded an appropriate accommodation for my disability, informed of my rights and not had my medical leave disrupted. I am informed and believe that in or about June 2011, or shortly thereafter, I developed a mental disability [mental illness – severe depression]. Although it was not immediately apparent to me that I had become disabled, it was apparent to my employer Morgan Stanley Smith Barney LLC, my co-workers and work partners. Indeed, I am informed and believe that my employer Morgan Stanley Smith Barney LLC, my co-workers and my work partners regularly discussed [among themselves] their observations regarding my disability and opined [without having medical background] what they believed my issues to be. Despite being aware of the fact that I had become disabled, neither my employer Morgan Stanley Smith Barney LLC, my co-workers nor my work partners offered an appropriate accommodation in a timely manner and did not give me timely information [if any] about my rights under the Americans with Disabilities Act, the California Family Right Act, the California Fair Employment and Housing Act or the federal Family Medical Leave Act. In particular, I experienced discrimination, and in some instances harassment [hostile work environment], because of my disability. Jon Lin [uinder the age of 40], in particular created a hostile work environment [through intimidation, yelling, raised voice, bad mouthing me to others, and berating comments] that exacerbated my disability [mental illness]. I expressed my concerns about John Lin to employer Morgan Stanley Smith Barney LLC by way of discussions I had with my co-partners. In about March 2012, I had a meeting with my work partners where I disclosed that I was being treated for severe depression and being treated by a physician. By May 2012, I have become so debilitated that I had to go on a medical leave of absence. While on medical leave of absence, in late December 2012, I was contacted by my employer Morgan Stanley Smith Barney LLC an asked to come into the office urgently to sign off on some revised various joint production agreements by which my work partners and I shared revenue. I was required to come to an office in a remote location on Sansome Street to meet my employer Morgan Stanley Smith Barney LLC on one of my work partners to sign these agreements. I was told it was urgent and imperative that I sign off because they affected staff pay and not me. I was rushed into signing the documents. I was told I had to sign them "right now" without being given a full and meaningful opportunity to read them. After I signed the documents, I later realized I had been mislead and that in reality the documents negatively impacted me and my spouse should I die. In retrospect, it now appears, that I was required to sign off on agreements that affected my future income, and that of my surviving spouse should I die, under duress, under false pretenses, and when I was not of sound mind and body, I was heavily medicated on psychotropic drugs and still on medical leave being treated for my illness. These agreements were far worse than agreements that were in place before I went on medical leave. I believe this was in inappropriate interference with my medical leave and further discrimination regarding my disability.



STATE OF CALIFORNIA | Department of Fair Employment and Housing

EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
117728-51548

SIGNED UNDER PENALTY OF PERJURY

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that, to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated on my information and belief, and I declare that those matters I believe to be true.

Verified by Robert J. Appleby, Complainant, and dated on May 10, 2013 at San Francisco, CA.

# EXHIBIT B

1   TRISH HIGGINS (State Bar No. 119215)
    thiggins@orrick.com
2   TIMOTHY B. DEL CASTILLO (State Bar No. 277296)
    tdelcastillo@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    400 Capitol Mall, Suite 3000
4   Sacramento, California  95814-4497
    Telephone:    916-447-9200
5   Facsimile:    916-329-4900

6   Attorneys for Defendants
    Morgan Stanley Smith Barney LLC, John S. Lin, Maynard
7   Lichterman, John Delahaye, Julie Baeder, and Walter Stevenson
    (also erroneously collectively named as "The Cypress Group")

8

9

10                    SUPERIOR COURT OF CALIFORNIA

11                      COUNTY OF SAN FRANCISCO

12

13   ROBERT APPLEBY and WINNIE          Case No. CGC–14–539080
     APPLEBY,
14                                      **ANSWER OF DEFENDANTS TO**
                  Plaintiffs,           **PLAINTIFFS' UNVERIFIED COMPLAINT**
15                                      **FOR DAMAGES**

16        v.

17   MORGAN STANLEY SMITH BARNEY
     LLC is a limited liability corporation organized
18   and existing under the laws of the Delaware;
     THE CYPRESS GROUP at Morgan Stanley
19   (legal form unknown); JOHN S. LIN; and
     individual; MAYNARD LICHTEMAN, an
20   individual; JOHN DELAHAYE; an individual;
     JULIE BAEDER, an individual; WALTER
21   STEVENSON; and individual; and DOES 1
     TO 20, inclusive,
22

23                Defendants.

24

25

26

27

28

OHSUSA:757976116.3

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES



ENDORSED
FILED
Superior Court of California
County of San Francisco

MAY 19 2014

CLERK OF THE COURT
BY: _____
       WESLEY RAMIREZ
              Deputy Clerk

1        Defendants Morgan Stanley Smith Barney LLC, John S. Lin, Maynard Lichterman, John

2 Delahaye, Julie Baeder, and Walter Stevenson (also erroneously collectively named as "The

3 Cypress Group") (collectively "Defendants") hereby answer the unverified Complaint for Damages

4 ("Complaint") filed by Plaintiffs Robert Appleby and Winnie Appleby ("Plaintiffs") as follows:

5 **GENERAL DENIAL**

6        Pursuant to California Code of Civil Procedure Section 431.30(d), Defendants generally

7 deny each and every material allegation of the Complaint and further deny that Plaintiffs have been

8 damaged in the manner or amount alleged, or in any manner or amount.

9 **DEFENSES**

10 **Failure to State a Claim**

11      1.     As a separate defense to the Complaint and to each cause of action therein,

12 Defendants allege that Plaintiffs have failed to state facts sufficient to constitute a cause of action.

13 With respect to Plaintiffs' causes of action for fraud and defamation, in particular, Plaintiff have

14 failed to alleged facts with the requisite degree of particularity.

15 **Agreement to Arbitrate**

16      2.     As a separate defense to the Complaint and to each cause of action therein,

17 Defendants allege that Plaintiffs' claims are subject to the terms of an agreement to arbitrate and

18 arbitration of Plaintiffs' claims is required under that agreement.  Because Plaintiffs failed to

19 submit the dispute to arbitration, Plaintiffs are precluded from bringing this action.

20 **No Employment Relationship**

21      3.     As a separate defense to the Complaint and each cause of action therein, Defendants

22 cannot be liable to the extent no employment relationship existed.

23 **No Standing**

24      4.     As a separate defense to the Complaint and each cause of action therein,

25 Defendants allege that Plaintiffs lack standing to assert the causes of action alleged in the

26 Complaint.

27 ///

28 ///

-1-

**No Causation**

5.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any alleged conduct or omission by Defendants was not the cause in fact or proximate cause of any injury alleged by Plaintiffs.

**After-Acquired Evidence**

6.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any relief Plaintiffs may otherwise be entitled to should be barred and/or limited by subsequently discovered evidence of misconduct by Plaintiffs which would have resulted in Plaintiffs' termination.

**Approval and Ratification**

7.    As a separate defense to the Complaint and to each cause of action therein, Defendants alleges that Plaintiffs approved and ratified the actions complained of therein and are barred from asserting any claims upon which Plaintiffs now seek relief.

**Waiver and Release**

8.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs relinquished and waived any right to any of the claims upon which Plaintiffs now seek relief.

**Failure to Exhaust Administrative Remedies**

9.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs may have failed to exhaust their administrative remedies as required under the California Fair Employment and Housing Act and Cal. Govt. Code § 12900 *et seq.*

**Avoidable Consequences**

10.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Defendants exercised reasonable care to prevent and correct promptly any alleged unlawful behavior and Plaintiffs failed to take advantage of preventive and corrective opportunities offered by Defendants and/or otherwise to avoid harm.

///

**Business Necessity**

11.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Defendants' actions were for a legitimate business purpose necessary for the safe and efficient operation of Defendants' business.

**Failure by Plaintiffs to Use Ordinary Care**

12.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs failed, in whole or in part, to comply with their obligations under California Labor Code §§ 2854, 2856, 2858, and 2859, respectively, to the extent that Plaintiffs failed to use ordinary care and diligence in the performance of their duties, failed to substantially comply with the reasonable directions of their alleged employer, and failed to exercise a reasonable degree of skill in performing their job duties.

**Privilege and Justification**

13.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that all of the alleged acts and conduct of Defendants of which Plaintiffs complain were privileged and/or justified.

**Undue Hardship**

14.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that to the extent that Plaintiffs allege that Defendants failed to provide him a reasonable accommodation, any alleged accommodation not provided would be unreasonable or impose an undue hardship.

**Workers' Compensation Preemption**

15.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that this Court lacks jurisdiction over any claim by Plaintiffs for alleged mental, emotional and/or physical distress on the grounds that such claims are subject to the exclusive provisions of the California Workers' Compensation laws. *See* Cal. Labor Code § 3600, *et seq.* Alternatively, Defendants allege that they may be entitled to a set-off for any amounts paid to Plaintiffs pursuant to the California Workers' Compensation Act.

///

**Failure to Mitigate**

16.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs' recovery in this action is barred by Plaintiffs' failure to exercise reasonable care and diligence to mitigate Plaintiffs' alleged damages.  Alternatively, Defendants allege that any recovery by Plaintiffs should be reduced by those damages that Plaintiffs failed to mitigate.

**Failure to Exhaust Internal Remedies**

17.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs failed to exhaust internal remedies and to take advantage of preventive and corrective opportunities offered by Defendants and/or otherwise to avoid harm.

**Truth**

18.     As a separate defense to the Complaint and to each cause of action therein, Defendants assert that all statements and comments by Defendants about Plaintiffs were true.

**Legitimate Reasons**

19.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that the alleged actions complained of were not based upon a retaliatory reason, but were based upon legitimate, non-retaliatory, job-related reasons.

**At-Will Employment Relationship**

20.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs' action is barred because of the at-will nature of Plaintiffs' alleged employment.

**Breach of Duty**

21.     As a separate defense to the Complaint, Defendants allege that Plaintiffs, by their acts and omissions, breach of duty, failure to perform, and by their own breaches of the implied covenant of good faith and fair dealing, breached any contract Plaintiffs allege to have existed and therefore are not entitled to any relief under that alleged contract or agreement.

///

///

-4-

**Good Faith**

22.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that they acted in good faith and had reasonable grounds for believing their actions did not violate California or Federal law.

**No Damages**

23.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs have failed to state facts sufficient to support an award of punitive, exemplary, and/or emotional distress damages against Defendants.

**Mixed Motive**

24.     As a further defense to the Complaint and to each cause of action therein, Defendants assert that, even if it is determined that a retaliatory reason motivated the alleged adverse employment action, which Defendants have and continue to deny, Defendants would have, in any event, taken the same action based upon other legitimate, non-retaliatory reasons standing alone and in the absence of the alleged retaliatory reason.

**Failure of Condition Precedent**

25.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs are barred from any recovery to the extent they failed to satisfy all conditions precedent that were required before Defendants had any obligations to act or to not act.

**Estoppel**

26.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs, by their acts or omissions, are estopped from asserting any claims upon which Plaintiffs now seeks relief.

**Laches**

27.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs have unreasonably delayed bringing this action to the prejudice of Defendants, and therefore Plaintiffs' Complaint and each cause of action therein is barred by the doctrine of laches.

///

**Unclean Hands**

28.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs, by their acts and omissions, are barred by the doctrines of unclean hands and/or *in pari delicto* from asserting any of the claims upon which Plaintiffs seek relief.

**Bad Faith**

29.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any and all acts, occurrences and damages alleged or referred to in the Complaint were proximately caused by the bad faith of Plaintiffs in that Plaintiffs failed to deal fairly, honestly, and reasonably with Defendants; therefore, the comparative bad faith of Plaintiffs reduces their right to recover, if any, by the amount which their bad faith contributed to the damages alleged.

**Statute of Limitations**

30.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation, including, but not limited to California Government Code sections 12960; California Code of Civil Procedure §§ 337, 338, 339, 340, 343; 42 U.S.C. §§ 2000e-5, 12117; 29 U.S.C. § 2617.

**Comparative Fault**

31.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that any recovery by Plaintiffs is barred or must be reduced as a result of Plaintiffs' comparative fault.

**Contributory Negligence**

32.    As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs failed to exercise reasonable and ordinary care with respect to the matters complained of, and Plaintiffs' alleged damages were proximately caused by their own negligence.

///

///

**Assumption of Risk**

33.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs assumed the risk of all damages of which Plaintiffs now complain.

**Conduct Not Unreasonable or Outrageous**

34.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that their alleged conduct was not unreasonable or outrageous.

**No Injunctive Relief Available**

35.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that Plaintiffs are not entitled to equitable relief in the form of a permanent injunction because Plaintiffs have failed to avail themselves of or exhaust plain, adequate, and/or complete remedies of laws available to Plaintiffs under the provisions of applicable state or federal law.  Additionally, Defendants allege that Plaintiffs' Complaint fails to allege facts sufficient to justify injunctive or other equitable relief.

**Set-Off**

36.     As a separate defense to the Complaint and each cause of action therein, Defendants allege that they are entitled to a set-off for amounts paid to Plaintiffs.

**Good Faith**

37.     As a separate defense to the Complaint and each cause of action therein, Defendants allege that they cannot be held liable for punitive damages because, at the time of the alleged acts or omissions giving rise to Plaintiffs' claim for punitive damages, Defendants had implemented in good faith one or more policies prohibiting the alleged acts or omissions and/or had otherwise had made good faith efforts to comply with the applicable law.

**No Punitive Damages**

38.     As a separate defense to the Complaint and each cause of action therein, Defendants allege that imposition of punitive damages would violate Defendants' due process and equal protection rights guaranteed by the United States Constitution.

///

///

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES

**Defendants' Attorney's Fees and Expenses**

39.     As a separate defense to the Complaint and to each cause of action therein, Defendants allege that all of the causes of action alleged against Defendants are frivolous, unreasonable, and groundless.  Accordingly, Defendants are entitled to all costs, expenses and attorneys' fees incurred in defending these causes of action pursuant to California Code of Civil Procedure § 128.7.

**Reservation of Rights**

40.     Defendants have insufficient knowledge or information on which to form a belief as to whether they have any additional, as yet unstated, defenses available.  Defendants reserve the right to assert additional defenses in the event discovery indicates it would be appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for relief as follows:

1.     That the Complaint be dismissed with prejudice and that Plaintiffs take nothing thereby;

2.     That Defendants be awarded their attorneys' fees and costs of suit under applicable law;

3.     That judgment be entered in favor of Defendants on all claims; and

4.     For such other and further relief as the Court deems just.

Dated: May 19, 2014.

TRISH HIGGINS
TIMOTHY B. DEL CASTILLO
Orrick, Herrington & Sutcliffe LLP

By: _____
TRISH HIGGINS
Attorneys for Defendants

-8-

1

**PROOF OF SERVICE BY MAIL**

2      I am more than eighteen years old and not a party to this action.  My business address and

3  place of employment is Orrick, Herrington & Sutcliffe LLP, 400 Capitol Mall, Suite 3000,

4  Sacramento, California 95814.

5      On May 19, 2014, I served the foregoing:

6      •   **ANSWER OF DEFENDANTS TO PLAINTIFFS' UNVERIFIED
           COMPLAINT FOR DAMAGES**

7

8  by placing a true and correct copy thereof in a sealed envelope addressed as follows:

9      Mary Shea Hagebols                   Attorneys for Plaintiff s
       Shea Law Offices                     Robert Appleby and Winnie Appleby
10     1814 Franklin Street, Suite 2200
       Oakland, CA  94612

11

12     Carney R. Shegerian
       Shegerian & Associates, Inc.
       225 Arizona Avenue, Suite 400

13     Santa Monica, CA  90401

14

15      I am employed in the county from which the mailing occurred.  On the date indicated

16  above, I placed the sealed envelopes for collection and mailing at this firm's office business

17  address indicated above.  I am readily familiar with this firm's practice for the collection and

18  processing of correspondence for mailing with the United States Postal Service.  Under that

19  practice, the firm's correspondence would be deposited with the United States Postal Service on

20  this same date with postage thereon fully prepaid in the ordinary course of business.

21      I declare under penalty of perjury under the laws of the State of California that the

22  foregoing is true and correct.

23      Executed on May 19, 2014, at Sacramento, California.

24

25                                           _____
                                                  Jeanette Ponce

26

27

28

OHSUSA:757976116.3

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES